IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

VICKY CHASTAIN,

Plaintiff,

v.

PHYSICIANS HAIR TRANSPLANT
CENTER, INC., et al.,

Defendants.

CIVIL ACTION FILE

NO. 1:20-CV-1315-TWT

## OPINION AND ORDER

This is an action under the Fair Labor Standards Act. It is before the
Court on the Defendants' Motion for Summary Judgment [Doc. 74]. For the
reasons set forth below, the Court DENIES the Defendants' Motion for
Summary Judgment [Doc. 74].

## I.   Background

From September 17, 2018, to November 19, 2019, the Plaintiff Vicky
Chastain was employed as a salesperson at the Defendant Physicians Hair
Transplant Center, Inc. ("PHTC"), a restoration hair clinic based in
Alpharetta, Georgia. (Compl. ¶¶ 5-6; Pl.'s Statement of Additional Material

Facts ¶ 9.) Following her termination, the Plaintiff filed this suit against PHTC and its Chief Executive Officer ("CEO"), Dr. John P. Cole, alleging that the Defendants withheld two months of her sales commissions and failed to pay her for overtime work, in violation of her employment contract and the Fair Labor Standards Act ("FLSA" or "Act"). (Compl. ¶¶ 8-17.) Discovery is now closed in the case, and the Defendants have moved for summary judgment as to both the Plaintiff's breach of contract and FLSA claims.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

## A.  The Parties' Statements of Material Facts

2

In support of their Motion for Summary Judgment, the Defendants submitted a Statement of Material Facts pursuant to Local Rule 56.1(B)(1), to which the Plaintiff responded with objections and admissions as well as her own Statement of Additional Material Facts. The Court has reviewed these documents in an effort to piece together the undisputed factual record on this Motion. However, in the course of this task, the Defendants have exhibited a blatant disregard for the elementary rules of civil procedure, which has become a persistent feature of this litigation and all but dooms their bid for summary judgment. The Court finds it necessary to separately address these procedural violations given their bearing on the Parties' factual contentions.

First, the Defendants have failed to respond to the Plaintiff's Statement of Additional Material Facts, in violation of Local Rule 56.1(B)(3). LR 56.1(B)(3), NDGa ("If respondent provides a statement of additional material facts, then, within the time allowed for filing a reply, the movant *shall* file a response to each of the respondent's facts.") (emphasis added). The Court interprets the Defendants' silence as a concession that the Plaintiff's material facts are true, so long as those facts are supported by evidentiary citations and are not contradicted in the Defendants' Statement of Material Facts. *See Smith v. MTI Limo & Shuttle, Inc.*, No. 1:10-cv-448-AT, 2011 WL 13272825, at *2 (N.D. Ga. Sept. 12, 2011) ("As a result of Defendants' failure to respond, the Court will accept the facts contained in Plaintiff's Statement of Additional

3

Material Facts as true to the extent they are supported by the evidence, do not make credibility determinations, do not involve legal conclusions, and are not disputed by Defendants' Statement of Undisputed Material Facts."); *Lumbermen's Underwriting All. v. Blount Int'l, Inc.*, No. 3:05–CV–064–JTC, 2007 WL 7603709, at *1 (N.D. Ga. Feb. 5, 2007) (citation omitted) ("Because Defendant did not respond to Plaintiff's statement of additional facts, the Court deems each of Plaintiff's statement of additional facts admitted where the fact is supported by a citation to evidence proving such fact.").

Second, the Defendants have failed to respond to the Plaintiff's First Requests for Admissions [Doc. 34-2], in violation of Federal Rule of Civil Procedure 36(a)(3). (Pl.'s Statement of Additional Material Facts ¶¶ 53-61.) The Plaintiff served her First Requests for Admissions on the Defendants on August 13, 2020, and contacted the Defendants on at least two occasions seeking a response. (*Id.* ¶ 53-55.) She then noted their lack of response (and the consequences thereof) in two Motions to Compel Discovery filed on October 14, 2020, [Doc. 34] and March 24, 2021 [Doc. 58]. Under Rule 36,

> requests for admissions are automatically deemed admitted if not answered within 30 days, and . . . the matters therein are 'conclusively established' unless the court on motion permits withdrawal or amendment of the admissions. The rule is designed to expedite litigation, and it permits the party securing admissions to rely on their binding effect.

*United States v. 2204 Barbara Lane*, 960 F.2d 126, 129 (11th Cir. 1992) (citation omitted) (affirming summary judgment based on unanswered

4

requests for admissions). Because the Defendants have neither responded to the First Requests for Admissions nor moved to withdraw or amend their resulting admissions, those admissions are deemed conclusively established for purposes of this case. *See, e.g.*, *Smith v. Action Revenue Recovery, LLC*, No. 4:19-cv-00315, 2021 WL 1187082, at *3 (S.D. Ga. Mar. 29, 2021).

These two procedural violations are by no means the full extent of the Defendants' dilatory—and ultimately self-defeating—litigation tactics.[1] But the Court has given enough context to turn now to the undisputed facts relevant to this Motion. The Plaintiff started working at PHTC for the second time in September 2018, after Frank Brown, the office manager, contacted her about an open sales position. (Pl.'s Statement of Additional Material Facts ¶ 10.) Mr. Brown informed the Plaintiff that the Defendants would not offer her any overtime compensation, and that her compensation was limited to an annual base salary of $55,000 plus sales commission. (*Id.* ¶¶ 12-13.) The Plaintiff accepted the position and signed an offer letter dated September 10, 2018. (*Id.* ¶ 15.) The offer letter identified the Plaintiff's position as a "Sales

---

[1] For example, at outset of the litigation, the Defendants failed to reasonably confer with the Plaintiff on discovery and other case matters, as set forth in Federal Rule of Civil Procedure 26(f), forcing the Plaintiff to submit (and the Court to approve) a unilateral Preliminary Report and Discovery Plan [Doc. 26]. Moreover, as discussed in more detail below, the Defendants now raise an affirmative defense on summary judgment that was not designated in their earlier pleadings, in violation of Federal Rule of Civil Procedure 8(c).

Professional" and set her commission structure as follows: (1) 3% on all sales above $35,000.00 per month, (2) 5% on all sales above $100,000.00 per month, and (3) no commission on the first $35,000.00 of sales per month. (*Id.* ¶ 16.) The letter did not address the issue of overtime pay. (*Id.*)

As a salesperson, the Plaintiff was responsible for responding to sales leads from people inquiring about PHTC's hair transplant services. (*Id.* ¶ 21.) Dr. Cole preferred that the Plaintiff contact leads within the same day and gave her a company-issued cellphone to work at night and on the weekend for that purpose. (*Id.* ¶¶ 21-24.) On at least two occasions, Dr. Cole made a comment to the Plaintiff when she failed to respond to a lead over the weekend, and on the first occasion, he told her that he would take the cellphone back if she did not follow up on weekend leads. (*Id.* ¶ 24.) Dr. Cole also equipped the Plaintiff with a remote computer so that she could work during a vacation in May 2019. (*Id.* ¶ 39.) In addition to her sales duties, the Plaintiff would remain in the office until all surgeries were finished and the last patient was picked up for the day. (*Id.* ¶ 20.) The Defendants have admitted that the Plaintiff spent "little or no time" managing other employees at PHTC. (*Id.* ¶ 61.)

The Plaintiff states that she worked long days at PHTC, logging up to 12 hours per day to respond to sales leads, make international calls, and sit with patients after surgery. (*Id.* ¶¶ 26-28, 30-31.) The Defendants counter that the Plaintiff's workday usually started around 11:00 a.m.; however, the

6

Plaintiff testified that she sometimes came into the office at 11:00 a.m. as a result of working late into the evening. (*Compare* Defs.' Statement of Material Facts ¶ 16, *with* Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 16.) Dr. Cole was aware that the Plaintiff worked late hours because he required her to stay in the office until his last surgery of the day was finished. (Pl.'s Statement of Additional Material Facts ¶ 29.) The Plaintiff also cites four emails from the Plaintiff to potential clients, with Dr. Cole copied, sent between 9 p.m. and 1 a.m. in 2019. (*Id.* ¶ 30.) Moreover, the Defendants have admitted that the Plaintiff "worked for PHTC on weekends" and "was usually and customarily the last person to leave work at PHTC at the end of the day." (*Id.* ¶ 61.)

While employed at PHTC, the Plaintiff was never asked to punch a time clock to document her work hours. (*Id.* ¶ 35.) Instead, she logged her overtime hours each day on a personal calendar that she kept at home. (*Id.* ¶ 40.) She states that the calendar entries tracked only the hours she worked at the office, excluding her lunch break, and that she did not account for the hours spent working from home or on the weekend. (*Id.*) The Plaintiff did not report her overtime hours to Dr. Cole or any other PHTC employee, and she never received overtime compensation for those hours. (*Id.* at 41; Defs.' Statement of Material Facts ¶ 5.) Relatedly, the Defendants have admitted that the Plaintiff "worked 354 hours of overtime in 2019" and "more than 40 hours per week for most of the weeks between September through December 2018," and that

"PHTC failed to track and record the hours worked each week by [the] Plaintiff."[2] (Pl.'s Statement of Additional Material Facts ¶ 61.)

As explained above, the Plaintiff's original sales commission structure entitled her to receive 3% on all sales above $35,000 per month and 5% on all sales above $100,000 per month. However, on June 26, 2019, Dr. Cole sent the Plaintiff an email stating, "Unless the company hits a target of 175k in a month, there will be no sales incentives beginning in June." (*Id.* ¶ 44.) The email had retroactive effect: the Plaintiff received no commission for June 2019 based on sales of approximately $143,000, even though she would have qualified under the previous structure. (*Id.* ¶ 45.) For October 2019, the Plaintiff again was not paid a commission despite meeting PHTC's new sales minimum of $175,000. (*Id.* ¶ 48.) During discovery, the Plaintiff produced a list of her monthly sales in 2019 that is based on the commission sheets she submitted each month to the PHTC accounting department. (*Id.* ¶ 46.)

---

[2] In their Statement of Material Facts, the Defendants contend that the Plaintiff "is barred from recovering her overtime based upon her failure to follow the procedures established by [PHTC's] employee handbook." (Defs.' Statement of Material Facts ¶ 8.) The Court will not consider this "material fact" because it is really just a "legal conclusion" disguised as a fact, in violation of Local Rule 56.1(B)(1). LR 56.1(B)(1), NDGa ("The Court will not consider any fact . . . stated as an issue or legal conclusion[.]"). The Plaintiff also denies that she ever received or knew about the employee handbook, and that the handbook applied to her in any event. (Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 8.)

The Defendants attest that Dr. Cole was not involved in the day-to-day operation of PHTC, other than performing surgical procedures. (Defs.' Statement of Material Facts ¶¶ 18-19.) However, the Plaintiff denies this allegation, citing evidence that Dr. Cole was in fact intimately and regularly involved in running the company. (Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 18.) For example, Dr. Cole not only performed the surgical procedures at PHTC, but also set the pricing terms for those procedures. (*Id.*) The Plaintiff's offer letter states that she would report directly to Dr. Cole, and Dr. Cole provided the Plaintiff with a company cellphone to work from home and on the weekend. (*Id.*) Dr. Cole also gave the Plaintiff instructions on how to respond to sales leads and perform other aspects of her job, such as requiring the Plaintiff to remain in the office until the last patient had been picked up each day. (*Id.*) Lastly, he made the decision to modify the Plaintiff's commission structure in June 2019, and he personally reviewed and approved each of the Plaintiff's commission checks. (Pl.'s Statement of Additional Material Facts ¶¶ 43, 47.)

## B. Count I: Breach of Contract

In Count I of the Complaint, the Plaintiff alleges that the Defendants breached her employment contract by failing to pay out sales commissions of $3,401.99 for June 2019 and $5,301.50 for October 2019. (Compl. ¶¶ 11-12.) The Defendants move for summary judgment as to this claim, arguing that (1)

9

the Plaintiff has submitted no evidence to prove these amounts, and (2) the Defendants were entitled to amend the employment contract, including the commission structure, at will. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 7-8.) The Court takes up each of these arguments below.

First, the Defendants are mistaken that there is no proof substantiating the Plaintiff's alleged unpaid commissions. During discovery, the Plaintiff produced a list of her 2019 sales figures broken down by month (Chastain Dep., Ex. 21), and she testified that these numbers came from the commission sheets that she submitted each month of her employment at PHTC. (*Id.* at 221:7-223:25.) The list shows total sales of $143,039.80 in June 2019 and $181,030.10 in October 2019. (*Id.*, Ex. 21.) From there, calculating the amount of commission owed to the Plaintiff under the PHTC commission structure is simple arithmetic.[3] The Defendants, by contrast, have cited no evidence to refute the Plaintiff's sales records. The affidavit of Jennifer Byrd, the current accountant at PHTC, does not help the Defendants' cause since it says nothing about the Plaintiff's sales or commissions in June and October 2019. (Byrd Aff. ¶¶ 1-3; *see* Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 8.)

---

[3] For June 2019, subtract $35,000 from the Plaintiff's sales of $143,039.80; multiply the first $100,000 by .03 ($3,000) and the remaining $8,039.8 by .05 ($401.99); and then add the $3,000 and $401.99 together to yield the alleged commission of $3,401.99. Following the same formula for October 2019 likewise yields the alleged commission of $5,301.50.

Second, the Plaintiff's at-will employment status does not preclude a breach of contract action alleging unpaid compensation. Under Georgia law, "an employee may sue on an oral contract for employment terminable at will 'for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge[.]'" *E.D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 359 (1987) (quoting *Brazzeal v. Commercial Cas. Ins. Co.*, 51 Ga. App. 471 (1935)); *see also Walker Elec. Co. v. Byrd*, 281 Ga. App. 190, 192 (2006) (allowing an at-will employee to sue "on the contract for compensation allegedly due for services he performed during his employment"). While the Defendants were within their right to amend the Plaintiff's commission structure in June 2019, the Plaintiff rightly argues that this amendment could not apply retroactively without her assent and consideration. *See McLean v. Continental Wingate Co., Inc.*, 212 Ga. App. 356, 359 (1994) (recognizing "it is elemental that it is not possible to have a unilateral modification of a contract previously entered into between the parties.") (citation and alteration omitted); O.C.G.A. § 13-3-1 (requiring, for a valid contract, "a consideration moving to the contract" and "the assent of the parties to the terms of the contract"). Accordingly, the Court denies the Defendants' Motion for Summary Judgment as to the Plaintiff's breach of contract claim.

## C.  Count II: Violation of the FLSA

11

In Count II of the Complaint, the Plaintiff alleges that the Defendants violated the FLSA by failing to compensate her one and a half times her regular rate for overtime hours. (Compl. ¶ 17.) The Defendants move for summary judgment as to this claim, arguing that (1) the Plaintiff is exempt from the overtime provisions of the FLSA, 29 U.S.C. § 213(a)(1), and (2) the Plaintiff cannot meet her burden of proof to demonstrate any unpaid overtime hours. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 9, 12.) The Court addresses each argument in turn.

### 1. FLSA Exemption

The Defendants' first ground for summary judgment fails because the Defendants have not pleaded an FLSA exemption as an affirmative defense. "[FLSA] exemptions are treated as affirmative defenses to liability under the Act, which means that the defendant-employer has the burden of proving that the exemption applies to the plaintiff-employee." *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 50 (D.D.C. 2006). Under Federal Rule of Civil Procedure 8(c), this affirmative defense must be specifically pleaded or else it will be deemed waived. *See Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005) ("A claim of exemption under the FLSA is an affirmative defense that, pursuant to [Rule] 8(c), must be specifically pleaded or it will be deemed waived."); *Rotondo v. Georgetown*, 869 F. Supp. 369, 373 (D.S.C. 1994) ("[T]he assertion of an exemption from the mandates of the FLSA

is an affirmative defense that is waived if it is not specifically pleaded by a defendant"). Nonetheless, the Eleventh Circuit has recognized that "a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff." *Edwards v. Fulton Cnty., Ga.*, 509 F. App'x 882, 887 (11th Cir. 2013).

It is undisputed that the Defendants' Answers failed to cite a statutory exemption as an affirmative defense to the Plaintiff's FLSA claim. (Dr. Cole Answer at 1-2; PHTC Answer at 1-2.) Instead, the Defendants invoke this defense for the first time in their Motion for Summary Judgment—more than a year after filing (and never seeking to amend) their Answers and more than a month after the close of discovery [Doc. 54]. The Plaintiff argues that she has been prejudiced by the Defendant's omission because she "was never put on notice of the exemption [on] which the Defendants relied and therefore [was] not able to seek discovery on that issue." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 4.) Having failed to file a reply brief, the Defendants do not contest the Plaintiff's claim of prejudice, and the Court thus finds that their FLSA exemption defense has been waived. *See, e.g.*, *Diaz v. Jaguar Rest. Grp., LLC*, 627 F.3d 1212, 1215 (11th Cir. 2010) (holding a district court abused its discretion in allowing the defendant to amend its answer to include an FLSA exemption defense, where 14 months had passed since the filing of the answer and the plaintiff objected to the amendment); *Sejour v. Steven Davis Farms,*

13

*LLC*, 28 F. Supp. 3d 1216, 1224 (N.D. Fla. 2014) ("Defendants are not entitled to claim an exemption because they failed to specifically plead their exemption in their answer. Since Plaintiffs were not given timely notice of Defendants' intention to assert this exemption, to allow Defendants' argument would be unjust and would defy the purpose of the FLSA.").

### 2.  Burden of Proof

Next, the Defendants argue that the Plaintiff cannot meet her burden of proof to show that she was owed any overtime compensation. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 13-14.) Under the FLSA, an employer may not employ a person for more than 40 hours in a workweek unless he is paid overtime compensation at a rate not less than one and a half times his regular rate. 29 U.S.C. § 207(a)(1). A person is "employed" if he is suffered or permitted to work. *Id.* § 203(g). "It is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not relevant. 'If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.'" *Allen v. Board of Public Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (quoting *Reich v. Dep't of Conservation & Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir.1994)). Therefore, to succeed on an FLSA claim, a plaintiff must prove that "(1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work." *Id.* at 1314-15.

14

While the Defendants insist that neither element can be proven in this case, the Plaintiff wields the ultimate trump card: the Defendants' admissions to the First Requests for Admissions. In particular, the Defendants have admitted that the Plaintiff worked 354 hours of overtime in 2019, and that the Plaintiff worked more than 40 hours for most weeks between September and December 2018. (Pl.'s Statement of Additional Material Facts ¶ 61.) The Defendants do not deny that the Plaintiff received no overtime pay for these hours. The Defendants have also admitted that the Plaintiff was usually the last person to leave work at the end of the day, and that she was given a company cellphone to respond to sales inquiries on weekends. (*Id.*) The Plaintiff likewise states, without objection, that Dr. Cole wanted the Plaintiff to work on weekends and to stay in the office at night until the last surgery was finished. (*Id.* ¶¶ 20-24.) These admissions are sufficient to show that (1) the Plaintiff worked overtime without compensation and (2) the Defendants knew or should have known of her overtime work.

Even without these admissions, the Defendants would not be entitled to summary judgment as to the Plaintiff's FLSA claim. First, the Defendants contend that the Plaintiff's evidence is insufficient as a matter of law to show any overtime work. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 13- 14.) This argument is meritless. According to the Eleventh Circuit, "[i]t is the employer's duty to keep records of the employee's wages, hours, and other

conditions and practices of employment." *Allen*, 495 F.3d at 1315 (citing

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by*

*statute on other grounds*, Portal-to-Portal Act of 1947). In cases where the

employer's records cannot be trusted and the employee lacks documentation,

> an employee has carried out his burden if he proves that he has
> in fact performed work for which he was improperly compensated
> and if he produces sufficient evidence to show the amount and
> extent of that work as a matter of just and reasonable inference.
> The burden then becomes the employer's, and it must bring forth
> either evidence of the precise amount of work performed or
> evidence to negate the reasonableness of the inference to be
> drawn from the employee's evidence. If the employer fails to
> produce such evidence, the court may then award damages to the
> employee, even though the result be only approximate.

*Id.* at 1316 (quotation marks and citations omitted). The burden on the

employee to prove overtime work is not intended to be an "impossible hurdle"

given "the remedial nature of this statute and the great public policy which it

embodies[.]" *Id.* at 1315 (citation and alteration omitted).

Here, the Defendants put great weight on the fact that the Plaintiff's

workday usually started around 11:00 a.m., but this fact, even if true, says

nothing about what time the Plaintiff finished work and, therefore, how many

hours she worked in a given day. By contrast, the Plaintiff has produced a

personal calendar logging the number of overtime hours that she worked each

day. (Chastain Dep., Ex. 31.) She also has evidence that she sent multiple work

emails in 2019 after 9:00 p.m. (Ferreira Decl. ¶¶ 5-8), and provides an affidavit

from a former PHTC receptionist corroborating that the Plaintiff worked "well

16

past 6:30 [p.m.] most every night[.]" (Ritter Aff. ¶ 9.) The Plaintiff testified that Dr. Cole wanted her to work on weekends and during vacation to respond to sale leads and handle other job duties. (Chastain Dep. at 73:4-75:18, 91:11-92:18, 172:16-174:25.) In response, the Defendants have produced not a single piece of evidence refuting the Plaintiff's documents and testimony, nor did the Defendants apparently keep track of the Plaintiff's work hours or maintain any record of those hours.[4]

For this reason, the Defendants' reliance on *Melton v. Tippecanoe County*, 838 F.3d 814 (7th Cir. 2016), is misplaced. In *Melton*, the court affirmed a summary judgment award in favor of the defendant county as to a former employee's FLSA claim. *Id.* at 820. The plaintiff alleged that he had been required to work through his lunch break without compensation and produced a spreadsheet from memory of his unpaid lunch hours. *Id.* at 819. While reliance on the employee's recollection was permissible, the court held

---

[4] In their Statement of Material Facts, the Defendants state that the Plaintiff "is unable to produce any phone records, the actual evidence of her sales efforts, which reflected any work by her after 6:00 p.m. on any day comparing it to her alleged calendar." (Defs.' Statement of Material Facts ¶ 14.) To support this statement, the Defendants cite approximately 100 pages of phone records from a number that, upon the Court's review of the record, may have been associated with the Plaintiff's company cellphone. (Chastain Dep., Exs. 1-16.) The Court agrees with the Plaintiff that these records, unaccompanied by any explanation from the Defendants, do not support the Defendants' material fact. (Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 14.) Further, the Plaintiff testified that she was unable to verify the phone records because she did not recall her company cellphone number. (*Id.*)

that such reliance "does not mean the plaintiff may survive summary judgment where his recollection is flatly refuted by other evidence in the record[.]" *Id.* (quotation marks and citation omitted). Importantly, the county had provided contemporaneous records showing that many of the plaintiff's allegedly uncompensated hours were in fact compensated. *Id.* at 820. The Plaintiff's spreadsheet also indicated that he was never paid for more than 37.5 hours in a week, but that claim was also contradicted by the county's payroll records. *Id.* at 820. Unlike in *Melton*, though, the Defendants here have produced no evidence calling into question the Plaintiff's personal calendar or other evidence of unpaid overtime work.

Second, the Defendants argue that the Plaintiff cannot recover on her FLSA claim because she did not seek prior approval to work overtime, as required by the PHTC employee handbook. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 12-13.) As a threshold matter, the Plaintiff testified that she never received or was made aware of the employee handbook, and the Defendants have not produced a handbook acknowledgment signed by the Plaintiff. (Chastain Dep. at 54:14-55:12.) Regardless, the Plaintiff has produced evidence that preapproval of overtime work was not the *actual practice* at PHTC (Ritter Aff. ¶ 8; Chastain Dep. at 233:8-21), so the Defendants' "reliance on the policy stated in the handbook does not immunize [them] from FLSA liability." *Skelton v. American Intercontinental Univ.*

18

*Online*, 382 F. Supp. 2d 1068 (N.D. Ill. 2005). Finally, it is also not dispositive that the Plaintiff was told at hiring she would not be paid overtime because an employee's right to overtime compensation "cannot be abridged by contract or otherwise waived" under the Act. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). For these reasons, the Court denies the Defendants' Motion for Summary Judgment as to the Plaintiff's FLSA claim.

## D. Dr. Cole's Liability

Lastly, the Defendants argue that Dr. Cole, in his individual capacity, is entitled to summary judgment as to both counts because "there is no legal or factual basis . . . which creates a cause of action against [him][.]" (Defs.' Br. in Supp. of Summ. J., at 15.) With respect to Count I for breach of contract, the Defendants rely exclusively on the fact that Dr. Cole did not sign the Plaintiff's offer letter or Employment Agreement. (*Id.* at 14-15.) However, the Plaintiff counters that, regardless of who signed those documents, Dr. Cole breached her employment contract by unilaterally and retroactively altering her sales commission structure in June 2019 and by refusing to pay her commission for October 2019.[5]  (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 25.) The Court

---

[5] As explained above, Dr. Cole sent the email modifying the Plaintiff's commission structure on June 26, 2019, and he reviewed and approved all of her commission checks before she could receive them.

agrees with the Plaintiff that these alleged actions personally implicate Dr. Cole, and thus, he is not dismissed from the Plaintiff's breach of contract claim.

With respect to Count II for violation of the FLSA, the Defendants insist that Dr. Cole, as CEO of PHTC, was not involved in the company's day-to-day operation. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 15.) The FLSA creates a private right of action against any "employer" who violates the Act's overtime provisions, including "both the employer for whom the employee directly works as well as any person acting directly or indirectly in the interests of an employer in relation to an employee." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (quotation marks and citation omitted). Under this broad definition, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* (quoting *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986)). "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel*, 803 F.2d at 638.

The Plaintiff has submitted ample evidence that Dr. Cole was both involved in the day-to-day operation of PHTC and directly supervised her work there. First, the Plaintiff's offer letter states that she would report to Dr. Cole during her employment. (Chastain Dep., Ex. 27.) Dr. Cole also repeatedly

instructed the Plaintiff on when and how to perform her sales and other duties, directing her to respond to leads within the same day and even on weekends, providing her with a company cellphone for that purpose, and asking her to remain at the office until all surgeries had been completed for the day. (Chastain Dep. at 59:22-60:9, 172:16-174:25.) Further, he was the person at PHTC who determined (and modified) the Plaintiff's sales commission structure, approved her commission checks each month, and set the pricing terms for surgical procedures. (Chastain Dep., Ex. 19; Naidoo Decl. ¶ 3; Cole Dep. 17:3-19:23.) Accordingly, the Court will not dismiss Dr. Cole from the Plaintiff's FLSA claim.

## IV.   Conclusion

For the reasons set forth above, the Court DENIES the Defendants' Motion for Summary Judgment.

SO ORDERED, this ___3rd___ day of January, 2022.

THOMAS W. THRASH, JR.

United States District Judge